THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| American Commercial Lines LLC,<br>Western Kentucky Navigation, Inc.,<br>National Liability & Fire Insurance Company,<br>Starr Indemnity & Liability Company,<br>Fireman's Fund Insurance Company,<br>XL Specialty Insurance Company AND<br>National Union Fire Insurance Co. of<br>   Pittsburg, Pa.<br><br>                    Plaintiffs,<br><br>          v.<br><br>Edwards Enterprises, LLC<br>d/b/a Paducah Rigging<br>4105 Cairo Road<br>Paducah, Kentucky 42001<br><br>                    Defendant. | Case No. 5:11-cv-__181-R__ |

## COMPLAINT

This is a maritime and admiralty matter within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and arises out of the manufacture and/or sale and/or distribution by Defendant Edwards Enterprises, LLC d/b/a Paducah Rigging ("Paducah Rigging") of a defective face wire. American Commercial Lines LLC, Western Kentucky Navigation, Inc. and National Liability & Fire Insurance Company, Starr Indemnity & Liability Company, Fireman's Fund Insurance Company, XL Specialty Insurance Company and National Union Fire Insurance Co. of Pittsburg, Pa. (collectively "Plaintiffs") allege the following:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff American Commercial Lines, LLC (hereinafter "Plaintiff ACL") is a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business located at 1701 East Market Street, Jeffersonville, Indiana. At

all relevant times, Plaintiff ACL was the Fully Found Charterer of the M/V CINDY CELESTE, a 7,000 horsepower inland river towboat (hereinafter "The Towboat").

2.  Plaintiff Western Kentucky Navigation (hereinafter "Plaintiff WKN") is a dissolved corporation formerly organized and existing under the laws of the State of Kentucky and which was at all material times, the operator of the M/V CINDY CELESTE pursuant to a Fully Found Charter Agreement with Plaintiff ACL.

3.  Plaintiffs National Liability & Fire Insurance Company, Starr Indemnity & Liability Company, Fireman's Fund Insurance Company, XL Specialty Insurance Company and National Union Fire Insurance Co. of Pittsburg, Pa. ("Underwriters") are all insurance companies which, at all relevant times, provided liability insurance coverage to WKN and ACL for WKN's operation of The Towboat and also provided insurance coverage to Plaintiff ACL for any damages to any barges owned or operated by ACL. Underwriters, as the insurer for Plaintiff WKN and ACL, have paid Plaintiff ACL for much of the damages that Plaintiff ACL incurred in the involved incident and is legally subrogated to the recovery rights of Plaintiff WKN and Plaintiff ACL and have paid third parties for damages that third parties sustained as a result of the incident.

4.  Upon information and belief, Defendant Paducah Rigging ("Paducah Rigging") is an assumed named for Edwards Enterprises, LLC, a Kentucky limited liability company with its principal place of business at 4150 Cairo Road, Paducah, Kentucky.

5.  At all times relevant hereto, Paducah Rigging was engaged in the business of designing, manufacturing, distributing, selling, and/or otherwise placing into the stream of commerce, *inter alia*, wires and wire ropes including wires that are designed and sold to be used

as wires on inland river towboats to secure a tow of barges to the towboat for transportation (commonly referred to as "face wires").

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

7. Plaintiffs invoke the Court's admiralty jurisdiction pursuant Fed. R. Civ. Pro. 9(h).

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in Paducah, Kentucky, and Paducah Rigging is doing business in this venue and may be found there for the purpose of service of process.

## PLAINTIFFS' ALLEGATIONS

## BACKGROUND

9. At all times relevant hereto, Plaintiff ACL was engaged in the business of providing maritime transportation services and was the Owner and Fully Found Charterer of The Towboat and Plaintiff WKN was the operator of The Towboat.

10. In May of 2009, Plaintiff WKN purchased a one-inch diameter wire rope approximately 200' long with a mechanically swaged eye at one end, commonly called a "face wire" (hereafter, "the Face Wire") from Paducah Rigging for use as a face wire on The Towboat or other WKN operated towboats. The eye at the end of a face wire is created by taking one end of the wire and bending it around to lay adjacent to another part of the wire and securing it by using an aluminum sleeve which is mechanically compressed or "swaged" to hold the eye in place. The creation of the eye in the wire is part of the manufacturing process for a face wire. A copy of the purchase order and invoice for the Face Wire are attached as Exhibits A and B, respectively.

11.     Upon information and belief, Paducah Rigging designed, manufactured, distributed and/or sold the Face Wire and as part of the sale warranted that the Face Wire and all component parts and appurtenances were properly constructed and were in all respects fit for their intended use as a face wire.  On or about October 23, 2009, the Face Wire was installed on a winch on the port side of The Towboat near Vicksburg, Mississippi, and used as one of several face wires whose purpose was to connect the barges to the vessel.

**THE INCIDENT**

12.     On October 31, 2009 at 11:00 a.m., The Towboat picked up a tow of fifteen loaded ACL barges at approximate Mile 185 on the Upper Mississippi River ("UMR") and started southbound. The Towboat was attached to the tow using the Face Wire on the port side, a port wing wire, the starboard face wire, a starboard wing wire and a capstan line in the center. After successfully passing under the Martin Luther King Bridge and the Eads Bridge, The Towboat and tow slowed and was steering slightly to starboard to line up for the Poplar Street Bridge. At that time, the Face Wire (on the port side) failed and came loose causing a chain reaction which led to the port wing wire, the starboard face wire and wing wire and the capstan line having to hold the entire tow.  With the port Face Wire having failed, all the wing wires and the other face wire ultimately broke from being overloaded, allowing the tow to break loose and hit the right descending pier of the McArthur Bridge (approximate Mile 179, UMR), then topping to port hitting the left descending pier. As a result, various ACL barges in the tow drifted downriver causing damage to the  ACL barges, to third party barges and a boat, and striking a railroad bridge (the "Incident").

13.     Subsequently, it was determined that the Face Wire itself had not, in fact, actually broken, but rather the swaged aluminum sleeve holding the eye of the Face Wire cracked allowing the end of the wire to come loose which failure, upon belief, was a direct result and/or contributed to by either a defect in the aluminum sleeve and/or a defect in the Face Wire itself and/or improper or negligent swaging in the manufacturing process.

14.     It was also determined that the failure of the starboard face wire was caused by the wire being forced to bear too much of the load while The Towboat was attempting to control the entire tow because of the initial failure of the Face Wire on the port side.  Notably, the starboard face wire itself broke, but the eye, held by its aluminum sleeve, did not fail or come loose.

15.     The Face Wire's first use after being purchased by WKN came when it was installed on the port winch on The Towboat on October 23, 2009 when The Towboat was pushing a tow of empty, light barges northbound.  The Face Wire failed shortly after The Towboat picked up its loaded tow and started southbound. The failure of the Face Wire occurred less than 45 minutes after it was, for the first time, subjected to the normal forces involved in securing a 15-barge loaded tow southbound in high water, a customary and normal use of a face wire.

16.     As a result of the incident, two of the barges in The Towboat's tow, Barge SER 0301 and ACBL 5015 sunk. The remaining thirteen barges floated downstream and struck barges fleeted in Osage fleets causing damage to those barges and an Osage boat as well as ACBL's barges and cargoes.

## DAMAGES

17. Plaintiff ACL incurred damages to its equipment and to third party owned equipment and incurred costs for salvaging its property as a result of the Incident of at least $2,000,000.00

18. Plaintiff ACL incurred additional damages for loss of use, demurrage, and other consequential damages resulting from the failure of Paducah Rigging's faulty Face Wire and/or sleeve.

19. Additionally, Plaintiff ACL incurred claims brought by third parties for damages to their property as a result of the Incident.

20. Underwriters have sustained damages by virtue of payments made to ACL and third parties on behalf of its insureds, WKN and ACL.

## COUNT I – STRICT LIABILITY – DEFECTIVE DESIGN AND MANUFACTURE

21. Plaintiffs incorporate by reference paragraphs 1 through 20 as if repeated in full.

22. Paducah Rigging designed, manufactured, and/or sold the Face Wire at issue in its ordinary course of business.

23. The Face Wire was defective in its design and manufacture and was unreasonably dangerous when put to a reasonably anticipated use.

24. The Face Wire was used in a manner reasonably anticipated at the time of the Incident.

25. Plaintiffs incurred damages as a direct and proximate result of such defective condition as existed when the Face Wire was sold by Paducah Rigging.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against Paducah Rigging in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs,

reasonable attorney fees, and such other relief as the Court deems appropriate under the circumstances.

## COUNT II – STRICT LIABILITY – FAILURE TO WARN

26. Plaintiffs incorporate by reference paragraphs 1 through 25 as if repeated in full.

27. Paducah Rigging sold the Face Wire in the ordinary course of its business.

28. The Face Wire was unreasonably dangerous when put to a reasonably anticipated use.

29. Paducah Rigging did not give an adequate warning of the danger.

30. The Face Wire was used in a manner reasonably anticipated at the time of the Incident.

31. Plaintiffs were damaged as a direct and proximate result of the Face Wire being sold without an adequate warning.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against Paducah Rigging in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs, reasonable attorney fees, and such other relief as the Court deems appropriate under the circumstances.

## COUNT III – NEGLIGENCE – DEFECTIVE DESIGN AND MANUFACTURE

32. Plaintiffs incorporate by reference paragraphs 1 through 31 as if repeated in full.

33. The Face Wire was defective in its design and manufacture and was unreasonably dangerous.

34. Paducah Rigging failed to use ordinary care to design and manufacture the Face Wire to be reasonably safe from the risk of harm from using the Face Wire.

35. The damages sustained by Plaintiffs were directly and proximately caused by the negligence of Paducah Rigging in failing to safely and properly design and manufacture the Face Wire.

36. As a direct and proximate result of such negligent failure to safely and properly design and manufacture the Face Wire, Plaintiffs sustained damages.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against Paducah Rigging in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs, reasonable attorney fees, and such other relief as the Court deems appropriate under the circumstances.

## COUNT IV – NEGLIGENCE – FAILURE TO WARN

37. Plaintiffs incorporate by reference paragraphs 1 through 36 as if repeated in full.

38. Paducah Rigging sold the Face wire in the course of its business.

39. The Face Wire was dangerous when put to a reasonably anticipated use.

40. The Face Wire was used by Plaintiffs in a manner reasonably anticipated by Paducah Rigging at the time of the Incident.

41. Plaintiffs did not know and by using ordinary care could not have known of such dangerous condition.

42. Paducah Rigging, by using ordinary care, knew or should have known of such dangerous condition.

43. Paducah Rigging failed to warn Plaintiffs of such dangerous condition.

44. Paducah Rigging was thereby negligent.

45. As a direct and proximate result of such negligence, Plaintiffs sustained damages.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against Paducah Rigging in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs, reasonable attorney fees, and such other relief as the Court deems appropriate under the circumstances.

### COUNT V – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

46. Plaintiffs incorporate by reference paragraphs 1 through 45 as if repeated in full.

47. At the time of the sale of the Face Wire, Paducah Rigging breached the implied warranty of merchantability, as the Face Wire was not fit for the ordinary uses for which it was purchased and used.

48. As a direct and proximate result of this breach, Plaintiffs suffered damages.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against Paducah Rigging in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs, reasonable attorney fees, and such other relief as the Court deems appropriate under the circumstances.

### COUNT VI – BREACH OF WARRANTY FOR FITNESS FOR A PARTICULAR PURPOSE

49. Plaintiffs incorporate by reference paragraphs 1 through 48 as if repeated in full.

50. At the time of the sale of the Face Wire, Paducah Rigging had reason to know the particular purpose for which the Face Wire would be used, and knew that Plaintiffs were relying upon Paducah Rigging's knowledge, skill, and judgment to furnish a suitable product.

51. Paducah Rigging breached the implied warranty of fitness for a particular purpose in that the Face Wire was not fit for that purpose for which it was sold and purchased.

52. As a direct and proximate result of this breach, Plaintiffs suffered damages.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against Paducah Rigging in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs, reasonable attorney fees, and such other relief as the Court deems appropriate under the circumstances.

    Respectfully submitted,

    GAULT & BOX, PLLC

    s:/E. Spivey Gault
    E. Spivey Gault, Esq.
    Edward K. Box, Esq.
    P. O. Box 30
    Paducah, KY 42002-0030
    (270) 442-1900
    (270) 442-8247 facsimile
    sgault@gaultlaw.com
    ebox@gaultlaw.com

-and-

    THOMPSON COBURN LLP

    John S. Farmer, Esq.
    B. Matthew Struble, Esq.
    One US Bank Plaza
    St. Louis, Missouri 63101
    (314) 552-6000
    (314) 552-7000 Facsimile
    jfarmer@thompsoncoburn.com
    mstruble@thompsoncoburn.com

    Attorneys for Plaintiffs